UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JENNIFER JEAN KEITH

         **DECISION AND ORDER**

      Plaintiff,      1:17-CV-00669(JJM)

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

      Defendant.

---

    This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [13, 16].[1] The parties have consented to my jurisdiction [17]. Having reviewed the parties' submissions [13, 16, 20], the action is remanded for further proceedings.

**BACKGROUND**

    On September 23, 2013, plaintiff, who was 28 years old, filed an application for SSI, alleging a disability onset date of September 28, 2012, due to sciatic pain, oppositional defiance disorder, and bipolar/impulse control disorder. Administrative record [8], pp. 476-79, 488, 493.[2]

---

[1]  Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]  Based on the arguments before me, I have focused primarily on plaintiff's physical impairments.

After plaintiff's claims were initially denied (id., pp. 422-25), an administrative hearing was held on January 11, 2016 before Administrative Law Judge ("ALJ") Sharon Seeley, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 351-86. Plaintiff testified that she cared for her six year old daughter, but was unable to sit or stand for long. Id., pp. 360, 370. According to plaintiff, her back was "deteriorating" (id., p. 370) and that she needed to lay down two to three times a day. Id., p. 374. Although no one helped her with her housework, plaintiff testified that it was completed "little by little". Id.

In her April 27, 2016 decision, ALJ Seeley determined that plaintiff's severe impairments were degenerative disc disease of the lumbar spine, bipolar disorder, impulse control order, and borderline intellectual functioning (id., p. 338), and assessed plaintiff with the residual functional capacity ("RFC") to perform less than the full range of light work. Id., p. 341. With respect to plaintiff's physical abilities, ALJ Seeley found that she was able to "lift, carry, push and pull twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight hour work day and stand or walk for six hours in an eight hour work day, but must be able to alternate between sitting and standing at will"; "occasionally balance, stoop, kneel, crouch or crawl; occasionally climb stairs and ramps, but never climb ropes, ladders, or scaffolds; and work in an environment with no exposure to smoke, dust, fumes or other pulmonary irritants". Id. Although plaintiff testified to greater physical limitations, ALJ Seeley determined that her statements concerning the limiting effects of her symptoms were not entirely credible. Id., p. 342.

Prior to the issuance of ALJ Seeley's decision, plaintiff primarily treated with the following three doctors for her physical ailments: Dale Deahn, M.D., her primary care physician, John Fahrbach, M.D., a neurosurgeon, and Jafar Siddiqui, M.D., a pain management

specialist. In March 2012 plaintiff complained to Dr. Deahn of low back pain. Id., p. 547. At that time, her gait and posture were normal. Id., p. 553. A June 2012 MRI revealed a "diffuse disc bulge", which appeared to "exert [a] mass effect on the descending left L5 nerve root". Id., p. 556. In April 2013, it was noted that plaintiff was "[w]alking with a labored and limping gait", and that her spine was "rigid and bent forward with marked decreased range of motion". Id., p. 566. However, by June 2013, her gait and posture were back to normal and that remained so throughout her remaining treatment with Dr. Deahn. Id., pp. 569, 578.

Plaintiff began treating with Dr. Fahrbach in August 2013 for complaints of low back pain radiating to her feet, and an MRI taken in June 2013 revealed "a left-sided herniation at L4-5 with a moderate degree of stenosis", but "no significant central canal stenosis". Id., pp. 602-03. A July 2014 MRI revealed, *inter alia*, "Schmorl's nodes at multiple lower thoracic and upper lumbar levels with minimal posterior bulges in the upper lumbar and lower thoracic disc levels". Id., p. 682. At L4-5, the MRI revealed a "tear at the interior attachment of [the] left posterior annulus with left posterolateral protrusion encroaching on the left neural foramen slightly effacing the under surface of the exiting left L4 nerve root". Id., p. 682. However, an August 2014 nerve conduction study showed no evidence of neuropathy. Id., p. 684.

In September 2014, plaintiff started seeing Dr. Siddiqui, who began treating her with left sacroiliac joint injections. Id., pp. 707-18. Plaintiff last treated with Dr. Fahrbach in October 2014, and at that time he recommended that she continue with joint injections and conservative treatment. Id., p. 664. Plaintiff continued to regularly treat with Dr. Siddiqui through December 2015.

In determining plaintiff's physical RFC, ALJ Seeley noted that the only opinion regarding her physical RFC was from Dr. Deahn, "who stated in May 2012 (a few months prior

to the alleged onset date), that the claimant had no physical limitations that would prevent her from working". Id., p. 344. However, she did not give great weight to that opinion, since it was prior to the alleged onset date and did not "take into consideration subsequent evidence, which indicates that in August 2012, Dr. Deahn stated that a new MRI showed 'several areas of concern' and referred the claimant to orthopedics". Id. ALJ Seeley further noted that Dr. Fahrbach "stated that a June 2013 MRI of the lumbar spine showed no disc degeneration, good alignment, a mild disc herniation at L4-5 causing a mild degree of stenosis but no significant central canal stenosis". Id.

Based on the RFC and other factors, ALJ Seeley determined that there were sufficient jobs in the national economy that plaintiff could perform, and therefore was not disabled from September 13, 2013, the date her application was filed. Id., pp. 345-46. Shortly after ALJ Seeley's decision, plaintiff began treating with P. Jeffrey Lewis, M.D., a neurosurgeon, who noted that she "has been in pain management, has had a number of injections, oral medications, physical therapy all without much benefit". Id., p. 301. Dr. Lewis diagnosed plaintiff with an annular tear, herniated disc, and lumbar instability at L4-5, and performed lumbar surgery (a L4-5 fusion) on September 15, 2016. Id., pp. 18, 315.

ALJ Seeley's decision became the final decision of the Acting Commissioner when the Appeals Council denied plaintiff's request for review in May 2017. Id., pp. 1-5. Thereafter, this action was commenced.

## ANALYSIS

**A.   Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Did ALJ Seeley Properly Assess Plaintiff's RFC?**

Plaintiff argues that that ALJ Seeley's RFC was "not based on any physical medical source opinion, resulting in a finding not supported by substantial evidence and based on the ALJ's own lay opinion" and that in formulating the RFC, ALJ Seeley failed to address Dr. Siddiqui, "who routinely treated [her] and noted clinical limitations and difficulties". Plaintiff's Memorandum of Law [13-1], pp. 12-13. In response, the Acting Commissioner argues that the "well-developed record", which included "largely unremarkable lower extremity examination findings and moderate abnormalities on diagnostic imaging of her lumbar spine", established that plaintiff "could perform the above range of light work without . . . needing to recontact her physicians or obtain a consultative physical examination". Acting Commissioner's Brief [16-1], pp. 16-18. The Acting Commissioner also argues that ALJ Seeley was not required to discuss "Dr. Siddiqui's treatment notes by name" because he "did not provide any medical opinions . . . . did not testify at [the] hearing, supply medical evidence directly to the agency, or otherwise contact the agency to inform the ALJ . . . about Plaintiff's limitations". Id., pp. 12-13.

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Id. However, in the absence of a competent medical opinion, an ALJ is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018).

"As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Nelson v. Commissioner of Social Security, 351 F. Supp. 3d 361, 366 (W.D.N.Y. 2018). *See* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018). *But see* Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, *10 (W.D.N.Y. 2018) ("the regulations contemplate that the ALJ may form the RFC, at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion").

An exception arises "when the medical evidence shows only minor physical impairments". Perkins, 2018 WL 3372694, *3. In those circumstances, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's

assessment" (id.), but "must provide a function-by-function analysis of the claimant's work-related capacity". Judd v. Berryhill, 2018 WL 6321391, *8 (W.D.N.Y. 2018).

The record demonstrates this is not a case where the medical evidence shows "only minor physical impairments", such that ALJ Seeley could "render a common sense judgment about functional capacity". Perkins, 2018 WL 3372694. For example, the records of Dr. Siddiqui repeatedly noted that plaintiff had limited range of motion in her lumbar spine, as well as restricted extension and flexion. [8], pp. 708, 748.[3] His records also noted limitations in the range of motion and strength of plaintiff's left hip (id., p. 708) and indicated that plaintiff was not sufficiently managing her pain. For example, in September 2014 Dr. Siddiqui stated that plaintiff "may be a surgical candidate" (id., p. 707), and stated in July 2015 that her condition was "worsening". Id., p. 748. In fact, shortly after ALJ Seeley's decision, plaintiff began treating with a new neurosurgeon and underwent lumbar surgery. Id., pp. 301, 315.

Notwithstanding the importance of Dr. Siddiqui's records, ALJ Seeley failed to even mention them in her decision. ALJ Seeley's apparent failure to consider Dr. Siddiqui's records, which demonstrated that plaintiff's limitations from her lumbar spine were more than minor, plainly attributed to the error in determining plaintiff's RFC. *See* Sweet v. Berryhill, 2018 WL 1026230, *3 (W.D.N.Y. 2018) ("the ALJ makes no mention whatsoever of Dr. Rana's opinion, and so the Court is unable to conclude that it was given appropriate consideration. This is not a case in which the ALJ acknowledged and discussed the contents of a medical source opinion and merely neglected to expressly assign a weight, in which case the Court might be able to ascertain the ALJ's overall assessment of the evidence").

---

[3]      Dr. Siddiqui's September 11, 2014, March 27, April 14, June 12 and October 29, 2015 treatment notes state that "[t]he patient's functional status is limited as follows: ability to work" [8], pp. 669, 672, 707, 746, 751. However, those references appear to be recording plaintiff's subjective limitations, rather than Dr. Siddiqui's objective assessment.

In any event, even without any apparent consideration of Dr. Siddiqui's records, as evidence that ALJ Seeley plainly believed that plaintiff had more than minor limitations associated with her lumbar spine, she imposed a variety of related restrictions, including a requirement that plaintiff be permitted to alternate between sitting and standing *at will*, suggesting significant lumbar pain and/or strength issues. *See* Ferguson v. Commissioner of Social Security, 2013 WL 530868, *5 (E.D. Mich.), adopted, 2013 WL 508374 (E.D. Mich. 2013) ("[t]he imposition of a sit/stand *at will* requirement, allowing the individual to change positions at any time rather than prescribed intervals, is the most restrictive of all the sit/stand limitations" (emphasis in original)).

However, without the physical RFC being tethered to a medical opinion, these were not findings which ALJ Seeley could render as a lay person from the bare medical findings in the record. *See* Wells v. Colvin, 2015 WL 6829711, *2 (W.D.N.Y. 2015) ("[t]he ALJ's evaluation of plaintiff's RFC consisted solely of his interpretation of the bare medical findings in the record, which included, among others . . . objective findings of degenerative changes within plaintiff's lumbar and cervical spine, and evidence from physical examinations regarding plaintiff's limited range of motion. The ALJ was unqualified to interpret these findings, and his decision to do so rather than obtain a medical opinion regarding resulting functional limitations, if any, constituted reversible error"); Judd, 2018 WL 6321391 at *7 ("[i]t is unclear to the Court how the ALJ, who is not a medical professional, determined the RFC without a medical source statement or consultative examination report to assist her in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities. The decision demonstrates the ALJ's reliance upon her own lay opinion to determine Plaintiff's RFC, an error requiring remand").

The Acting Commissioner's remaining arguments do not compel a different conclusion. First, she argues that plaintiff did not request ALJ Seeley to recontact her physicians or obtain a consultative examination, and that it was plaintiff's burden to establish that she was disabled. Acting Commissioner's Brief [16-1], p. 18. While the Acting Commissioner correctly places the burden of establishing a disability with plaintiff, she ignores her own obligation to sufficiently develop the record. See Roscoe v. Berryhill, 2018 WL 4519880, *6 (W.D.N.Y. 2018) ("[i]t is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully. . . to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding . . . . In furtherance of his duty to develop the record, the ALJ may be required to order a consultative examination . . . when the evidence as a whole is insufficient to allow the ALJ] to make a determination or decision on the claim"); Nunez v. Barnhart, 2002 WL 31010291, *2 (E.D.N.Y. 2002) ("the claimant has the burden of providing medical evidence to show that he is disabled . . . the ALJ's duty includes assisting the plaintiff affirmatively in developing the record"). In fact, plaintiff's counsel specifically highlighted this deficiency to ALJ Seeley in plaintiff's Prehearing Memorandum, which noted that "[t]here are no opinions, medical or otherwise, on the claimant's physical limitations". [8], p. 542.

Lastly, the Acting Commissioner argues that any errors were harmless, since the RFC afforded plaintiff the "most generous of the sit/stand options" to permit her sit and stand at will, and "[a]s such, no other frequency regarding [her] need to alternate between sitting and standing was necessary". Acting Commissioner's Brief [16-1], p. 18. While that may ultimately be proven to be true upon a better developed record, as a lay person I sit in no better position than ALJ Seeley to make that determination. As demonstrated by plaintiff's testimony

that she had to lie down two to three times per day ([8], pp. 373-74), the need to alternate positions is not the only possible limitation arising from plaintiff's lumbar spine impairment that could impact her ability to work. Under these circumstances, I conclude that ALJ Seeley's RFC is not supported by substantial evidence.

**C.     Did ALJ Seeley Properly Assess Plaintiff's Credibility?**

Plaintiff argues that ALJ Seeley's credibility determination "failed to offer a clear and explicit explanation of why she found [her] testimony less than credible". Plaintiff's Memorandum of Law [13-1], pp. 18-22. "A finding that the witness is not credible must be set forth with sufficient specificity to permit intelligible plenary review of the record". Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). Thus, credibility "findings 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Nix v. Astrue, 2009 WL 3429616, *5 (W.D.N.Y. 2009) (*quoting* Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)); Konidis v. Colvin, 2015 WL 2454004, *7 (W.D.N.Y.), adopted, 2015 WL 2454038 (W.D.N.Y. 2015) ("credibility determinations must contain specific findings based on substantial evidence in order to allow for review"). "A recitation of the evidence, without more, is insufficient to permit th[e] Court to review the ALJ's credibility determination." Spear v. Astrue, 2014 WL 4924015, *20 (W.D.N.Y. 2014).

Since the case is being remanded to reassess plaintiff's RFC and ALJ Seeley found plaintiff's subjective complaints credible only to the extent of the limitations set forth in the RFC, plaintiff's credibility should also be reassessed with specificity on remand. *See* Shepard v. Astrue, 2013 WL 3243560, *9 (N.D.N.Y. 2013) (where the case was remanded "for clarification of the RFC determination, and the ALJ had questioned Plaintiff's credibility because

her statements were inconsistent with the RFC determination, [p]laintiff's credibility should also be reassessed on remand").

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [13] is granted to the extent that this case is remanded to the Acting Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Acting Commissioner's motion [16] is denied.

**SO ORDERED**.

Dated: May 16, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge